UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA LOPEZ,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>　　　　　　　　　　　　Defendant. | Case No.: 18cv1573-WQH-LL<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 11, 12]** |

On July 11, 2018, Plaintiff Sylvia Lopez filed a complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and disability insurance benefits and for supplemental security income ("SSI"). ECF No. 1. Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. ECF Nos. 11, 12.

This Report and Recommendation is submitted to the Honorable William Q. Hayes, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court of the Southern District of California. For the reasons

1

18cv1573-WQH-LL

set forth below, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

## I. PROCEDURAL BACKGROUND

On June 5, 2014, Plaintiff filed an application for a period of disability and disability insurance benefits under the Social Security Act, Title II. ECF No. 8, Administrative Record ("AR") at 218–29. On July 1, 2014, Plaintiff filed an application for SSI under the Social Security Act, Title XVI. Id. at 230–36. Plaintiff alleged disability beginning on May 4, 2014 due to fibromyalgia/arthritis, severe pains in [her] bones all over body, diabetes stage II, and high blood pressure. Id. at 270. The claims were denied initially on October 16, 2014, and upon reconsideration on January 16, 2015, resulting in Plaintiff's request for an administrative hearing. Id. at 170–71.

On November 30, 2016, an administrative hearing was held before Administrative Law Judge ("ALJ") Jay E. Levine. Id. at 84–103. Plaintiff appeared at the hearing with counsel, and testimony was taken from her and a vocational expert ("VE"). Id. In a written decision dated March 7, 2017, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 4, 2014 through the date of ALJ's decision. Id. at 59–68. The ALJ's decision became the final decision of the Commissioner on May 23, 2018 when the Appeals Council denied Plaintiff's request for review. Id. at 1–7.

On July 11, 2018, Plaintiff filed a complaint seeking judicial review by the federal district court. ECF No. 1. On December 1, 2018, Plaintiff filed a motion for summary judgment.[1] ECF No. 11-1 ("Pl.'s Mot."). On December 31, 2018, Defendant timely filed a cross-motion for summary judgment. ECF No. 12-1 ("Def.'s Mot."). On January 14, 2019,

---

[1] Plaintiff was required to file a motion for summary judgment by November 30, 2018. ECF No. 9. The Court accepted the late filing. Defendant did not request an extension of related dates. See Docket.

Plaintiff filed an opposition to the cross-motion and reply to Defendant's opposition.[2] ECF No. 12 ("Pl.'s Reply"). Defendant filed a reply to Plaintiff's opposition on January 29, 2019.[3] ECF No. 15 ("Def.'s Reply").

## II. SUMMARY OF THE ALJ'S FINDINGS

In the decision, the ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 4, 2014, her alleged onset date. AR at 64. At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, type II; left rotator cuff tear; and fibromyalgia. Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. Id. at 64–65. Next, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).[4] Id. at 65–67. In making the RFC determination, the ALJ stated, *inter alia*, the following:

> The claimant alleged disability based on fibromyalgia/arthritis, stage II diabetes mellitus, micro albuminuria, high blood pressure, restless leg syndrome, and neuropathy in her feet (1E; 8E; Hearing Testimony). She asserted her impairments cause her to experience severe pain all over her body including in her bones, wrist, shoulder joint, hip, and legs (1E; 4E). She also

---

[2] Plaintiff was required to file her opposition and reply by January 11, 2019. ECF No. 9. The Court accepted the late filing. Defendant did not request an extension of related dates. See Docket.

[3] Defendant was required to file her reply by January 25, 2019. ECF No. 9. The Court accepted the late filing.

[4] The Code of Federal Regulations cited define "light work" as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

reported side effects from medication including sleepiness, tiredness, and lack of strength (4E). The claimant further alleged she wakes up with hand cramps (8E). The claimant testified that she also experiences headaches, instability while walking, leg spasms, and fatigue from exertion (Hearing Testimony). She alleged she must lie down throughout the day (Hearing Testimony). The claimant also reported she falls down frequently and limps (Hearing Testimony).

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Id. at 65–66.

At step four, the ALJ accepted the vocation expert's testimony that characterized the claimant's prior work as a Parts Order and Stock Clerk and found that Plaintiff was capable of performing her past relevant work as a Parts Order and Stock Clerk as actually and generally performed. Id. at 67–68. The ALJ concluded that Plaintiff was not disabled from May 4, 2014 through March 7, 2017, the date of the decision. Id. at 68.

### III. DISPUTED ISSUE

The sole disputed issue that Plaintiff is raising as the grounds for reversal and an order directing payment of benefits or remand is whether the ALJ failed to properly evaluate Plaintiff's testimony concerning pain, symptom, and level of limitation. Pl.'s Mot. at 11–12.

### IV. STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citing Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003)).

///

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." Id. (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "In determining whether the [ALJ's] findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted). Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. Trevizo, 871 F.3d at 674–75 (citing Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007)). This includes deferring to the ALJ's consistency determinations and resolutions of evidentiary conflicts. See Lewis, 236 F.3d at 509. "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014).

Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. Id.

## V. DISABILITY HEARING AND DECISION

### A. Plaintiff's Hearing Testimony

On November 30, 2016, Plaintiff, represented by counsel, appeared at the hearing before the ALJ. AR at 86. Plaintiff testified that for twenty-one years, she held the same job for an electronics company, working as a stock clerk printing out documentations. Id. at 87–88. As part of her job, she had to lift a ream of paper weighing five pounds and put it on a cart. Id. at 88–89. Plaintiff stopped working there because she was laid off. Id. at 90. Plaintiff stated that towards the end of her employment as a stock clerk, "with the medicine they gave [her] for fibromyalgia, [she] couldn't do it anymore." Id. at 92–93.

/ / /

Plaintiff testified that after she was laid off, she worked as a caregiver but only lasted about a month because she "didn't have the muscles to do it" and when she knew she could not lift the patient, her doctor told her that she could not do that job any more. See id. at 93–94. Regarding medications, Plaintiff stated that she takes metformin for diabetes, gabapentin for fibromyalgia, and Topamax for headaches. Id. at 94–95. Plaintiff also stated that she takes ropinirole for restless leg syndrome. Id. at 100; see also id. at 659, 740. She testified that the Topamax helps with the headaches, but she has to lay down because she gets drowsy or "not stable walking." Id. at 95.

When asked what she does in a typical day, Plaintiff stated she makes her bed and tries to do things in the house like dusting, but she gets tired. Id. She stated that fatigue is the biggest thing that would prevent her from working and that the medicine always makes her sleepy. Id. at 95–96. She further stated that she "tr[ies] not to fall deep asleep" during the day, and normally sleeps from 8:30 at night until 7:30 in the morning. Id. at 96. Plaintiff testified that she tries to take little walks but cannot walk far because she has neuropathy in her legs and she falls. Id. Plaintiff further testified that she cooks "very little" and that her granddaughter comes over and makes dinner. Id. at 98. Plaintiff stated that she does the laundry, but her husband takes the basket down the stairs for her. See id. at 98–99. Plaintiff testified that she bathes without difficulties, but because of the torn rotator cuff in her arm, she has a difficult time putting on some items of clothing. Id. at 99.

Plaintiff stated that her health has deteriorated since she was laid off. Id. When asked when her "health took a nosedive," Plaintiff answered, "[P]robably within the last six months." Id. at 97. She testified the neuropathy in her feet developed maybe three months ago and that she did not have it when she was working. Id. Plaintiff testified that besides the pain in her feet and headaches, she also has pain in her shoulders, and at night, she "get[s] real bad pain inside [her] wrist bones." Id. at 98. Plaintiff further testified that in 2014, she was diagnosed with meralgia paresthetica in her right leg, that it is painful and causes her to limp. Id. at 100. Plaintiff states that she has restless leg syndrome, which keeps her up at night. Id.

**B.    ALJ's Evaluation of Intensity, Persistence, and Limiting Effects of Plaintiff's Symptoms**

In the ALJ's decision, he stated the following regarding his evaluation of Plaintiff's "statements about the intensity and persistence of symptoms, such as pain and her alleged limitations":

> Despite her allegations, the claimant reported she could do errands, walk short distances, stand for 1 hour at a time, sit for 2 hours at a time, and do light housekeeping chores without assistance (4E). She testified that she takes little walks during the day; she cooks a little bit; she washes laundry; and she has no difficulty showering (Hearing Testimony). The claimant also testified that she was laid off from work due to the company losing business, rather than because of her impairments (Hearing Testimony). These statements suggest the claimant is more capable than she alleged.
>
> Similarly, the objective medical evidence fails to provide strong support for the claimant's allegations of disabling symptoms and limitations. The claimant's records show most examinations were benign (e.g., 8F/28, 33–34, 52, 187); the claimant's allegations of headaches were intermittent at best and a magnetic resonance imaging (MRI) study of the brain was normal (8F/9, 54, 65); the claimant declined surgery for her left shoulder (8F/164); and abdominal complaints were unconfirmed by a CT scan and there was evidence of normal gastric emptying (8F/12).
>
> Nevertheless, the claimant did undergo a magnetic resonance imaging (MRI) study of the left upper extremity in October 2015 showing a full thickness supraspinatus tendon tear (8F/11). She was also diagnosed with fibromyalgia after some tenderness and trigger points were observed in June 2015 (8F/39). She was also diagnosed with restless leg syndrome in July 2015 (8F/49). A neurological examination in July 2015 also showed decreased sensation in the toes but a normal gait (8F/69–71). The claimant also exhibited decreased range of motion in the left shoulder in February 2016 and tenderness of the shoulder in April 2016 (8F/152, 164). At an exam in January 2015, the claimant also exhibited clenching of both hands, but no visible signs of tremor and normal strength throughout her extremities (7F/2).
>
> As for the opinion evidence, at the initial and reconsideration levels, State agency medical consultants reviewed the evidence of record. These consultants opined the claimant could perform medium exertional work with 6 hours of standing/walking and 6 hours of sitting in an 8-hour workday. The initial level consultant opined the claimant could perform frequent postural activities but not climbing of ladders/ropes/scaffolds. The reconsideration level consultant opined the claimant could perform unlimited balancing; frequent climbing of ramps/stairs, stooping, kneeling, crouching, and

crawling; and occasional climbing of ladders/ropes/scaffolds. (1A; 2A; 6A; 7A).

After reviewing the record as a whole, I find that the records support limiting the claimant to a light level of work with an option to alternate between sitting and standing at will. The claimant's testimony and reports in the record do not support her capacity to lift or carry at the medium level. Therefore, I accord little weight to the State agency opinions. Further, I find that postural limitations are not appropriate since the claimant did not allege any problems other than getting up from a bending position and poor balance. The claimant's allegations of poor balance and frequent falls are not well supported by the record and there is not objective evidence to show problems with bending. As such, I do not find that any specific postural limitations are necessary.

AR at 66–67.

## VI.    DISCUSSION

Plaintiff argues that (1) the ALJ's reliance on Plaintiff's activities of daily living to reject her testimony concerning pain, symptoms, and level of limitation do not constitute a specific, clear and convincing reason supported by substantial evidence; (2) the ALJ's reliance on the fact that Plaintiff was laid off from her job—rather than stopping work due to her disabilityto reject her testimony concerning pain, symptom, and level of limitation lacks the support of substantial evidence; and (3) the ALJ improperly rejected Plaintiff's testimony based on the objective medical evidence. Pl.'s Mot. at 6, 7, 9.

Defendant contends that the ALJ properly found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with medical and other evidence in the record. Def.'s Mot. at 8.

### A.    Relevant Law

The Ninth Circuit has established a two-part test for evaluating a claimant's subjective symptoms. See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation marks and citation omitted). The claimant, however, need not prove that the impairment reasonably could be expected to

8

18cv1573-WQH-LL

produce the alleged degree of pain or other symptoms; the claimant need only prove that the impairment reasonably could be expected to produce some degree of pain or other symptom. Id. If the claimant satisfies the first element and there is no evidence of malingering, then the ALJ "can [only] reject the claimant's testimony about the severity of her symptoms . . . by offering specific, clear and convincing reasons for doing so." Id. (internal quotation marks and citation omitted). General findings are insufficient; the ALJ must identify the discounted subjective symptoms testimony and the evidence that supports the ALJ's reasons for the weight given. See Reddick, 157 F.3d at 722 (internal citation omitted); see also Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017).[5] The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing the claimant's testimony, an "ALJ may consider . . . reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citation omitted). An ALJ also may consider the claimant's work record and testimony from doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which the claimant complains. Thomas, 278 F.3d at 958–59 (internal quotation marks and citation omitted); see also 20 C.F.R. § 404.1529(c). If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or her decision. See Thomas, 278 F.3d at 959; Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162–63 (9th Cir. 2008) (where the ALJ's assessment of a claimant's testimony

---

[5] Although Social Security Rulings do not have the force of law, "they constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and the Court defers to them "unless they are plainly erroneous or inconsistent with the Act or regulations." Quang Van Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989) (citations omitted).

is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and he did not claim that Plaintiff was malingering. See AR at 65–68. Thus, the Court considers the second part of the Ninth Circuit's two-part test: whether the ALJ gave specific, clear and convincing reasons for discounting Plaintiff's testimony.

### B. Activities of Daily Living

Plaintiff argues that none of her activities would exceed the limitations identified by Plaintiff. Pl.'s Mot. at 6. Plaintiff further argues that the ALJ fails to explain how Plaintiff's activities of daily living are inconsistent with her testimony or inconsistent with a disability, and thus fails to constitute a specific, clear and convincing reason supported by substantial evidence. Id. at 7. Defendant argues that the ALJ properly found that Plaintiff's daily activities "suggested [she] [was] more capable than she alleged." Def.'s Mot. at 16 (citing AR at 66).

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (internal quotation marks and citations omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. at 1113; see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (finding no legal error when the ALJ recognized that although evidence did not suggest claimant could work, it "suggest[ed] that [his] late claims about the severity of his limitations were exaggerated").

Here, the ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's pain and symptom testimony based on her daily activities. First, the

ALJ identified Plaintiff's pain and symptom allegations described during the November 20, 2016 hearing [AR 84–103], and in the record from her Disability Report form [AR 269–75 (1E)], January 27, 2015 Disability Report Appeal form [AR 310–15 (8E)], and her June 20, 2014 Pain Questionnaire [AR 297–99 (4E)]. AR at 65. They included allegations of severe pain all over, headaches, fatigue, medication side effects of sleepiness and lack of strength, hand cramps, leg spasms, instability while walking, frequent falls, limping, and the need to lie down throughout the day. Id. Next, the ALJ found that despite Plaintiff's allegations, she could do activities such as errands, short walks, light housekeeping chores, a little cooking, laundry, showering without difficulty, standing for one hour at a time, and sitting for two hours at a time. Id. at 66 (citing AR 84–103 (Hearing Testimony), 297–99 (4E)). The ALJ then provided a one-sentence explanation of his assessment: that the daily activities "suggest the claimant is more capable than she alleged." Id.

      The ALJ failed to explain how the activities conflict with Plaintiff's allegations. That Plaintiff can do some limited activities is not inconsistent with her allegations of pain, fatigue, and a need to lie down during the day. See Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014) ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."). Nor are these activities per se evidence of a capability of performing sustained work. See Smolen v. Chater, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted)). Therefore, the supposed inconsistency between Plaintiff's allegations and her activities of daily living does not satisfy the requirement of a clear and convincing reason to find Plaintiff's claims

///

of pain and limiting symptoms unbelievable, and thus is not supported by substantial evidence.

### C. <u>Laid Off From Job</u>

Plaintiff argues that the ALJ's reliance on Plaintiff leaving her job as a stock clerk due to being laid off, as opposed to a disabling limitation, lacks the support of substantial evidence because the ALJ "fails to acknowledge [Plaintiff's] deterioration after she was laid off from her second to last job and before her alleged onset date." Pl.'s Mot. at 9. Defendant argues that "the ALJ was entitled to consider the fact that she adequately performed her job at the time of the lay-off and did not leave the job due to her impairments." Def.'s Mot. at 18.

The ALJ did not err in determining that Plaintiff's lay-off from work was one factor that suggested Plaintiff was not totally debilitated. The ALJ stated that Plaintiff's testimony that she was laid off from work due to the company losing business, rather than because of her impairments was one reason that suggested Plaintiff "is more capable than she alleged." Pl.'s Mot. at 66. The ALJ may properly consider as one factor in assessing a claimant's subjective pain and symptom testimony that a claimant did not leave a job due to disability, and thus, could have the functional capacity to do past work. See Key v. Heckler, 754 F.2d 1545, 1552 (9th Cir. 1985) (finding that claimant could do other work or past work based partly on testimony that claimant lost his last job not because of a disability but because "[his] time ran out with the State of California"). The ALJ did consider Plaintiff's allegations of deteriorating health, but he considered them in light of Plaintiff's daily activities and the objective medical evidence. Thus, the ALJ provided a clear and convincing reason supported by substantial evidence that Plaintiff's lay-off was a factor suggesting that she could return to her past work.

### D. <u>Objective Medical Evidence</u>

Plaintiff argues that (1) the ALJ summarizes the medical evidence, but fails to explain what testimony is unsupported and why; (2) the ALJ misrepresents the record by stating that "most examinations were benign"; and (3) because the ALJ's other reasons for

12

18cv1573-WQH-LL

discounting Plaintiff's testimony is insufficient, it cannot be rejected based solely on a lack of objective medical evidence. Pl.'s Mot. at 9–10. Defendant argues that the ALJ cited to objective evidence throughout the record that was inconsistent with Plaintiff's allegations of pain and limiting symptoms. Def.'s Mot. at 11.

The ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's pain and symptom testimony based on objective medical evidence that he found did not provide strong support for Plaintiff's allegations. AR at 66. First, although the ALJ stated that the record showed "most examinations were benign," three of the four physical examinations cited by the ALJ were not entirely benign.[6] See id. The two exams in Exhibit 8F on pages 28 and 33 to 34 were conducted on May 12, 2015 and May 26, 2015 respectively. Id. at 716, 721–22. They both indicated "some pain on palpation of right thigh" and "[p]ositive diffuse tenderness to palpation throughout back, neck, muscles." Id. The exam in Exhibit 8F at page 52 was conducted on July 24, 2015 and indicated that Plaintiff had a rash. Id. at 740. The ALJ does not mention examples of other examinations, including the following, that were not entirely benign: (1) on May 6, 2014, the physical exam indicated "patient appears uncomfortable," "strength is weak in bilateral lower extremity secondary to pain," "[u]nable to do knee raises or extension of the knees against resistance" and "unable to stand up without using her arms from a seated position" [id. at 372]; (2) on May 9, 2014, the physical exam appeared normal, but the rheumatology doctor indicated in her assessment that "[p]atient has elevated CRP with normal sedimentation rate, headaches and scalp tenderness, visual changes, and diffuse body tenderness" [id. at 411, 414]; (3) on August 26, 2014, the physical exam indicated that "[p]atient appears uncomfortable" and [t]enderness on palpation to the distal quadricep

---

[6] Defendant offers additional arguments expanding on the "mostly benign exams" reason, including that (1) findings of a "normal gait" and "no strength deficit" directly contrast with Plaintiff's allegations of leg spasms or difficulty walking, and (2) findings of "tenderness" do not equate to disability. Def.'s Mot. at 12. However, the ALJ did not offer those reasons in the disability determination, and so the Court may not consider them. Garrison v. Colvin, 759 F.3d at 1010 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

muscle bilaterally" [id. at 557]; (4) on September 2, 2014, the physical exam indicated "[t]enderness on palpation to the bottom third of her right thigh with severe point tenderness" [id. at 562]; (5) on October 14, 2014, the physical exam by the neurology doctor indicated "testing revealed: [a] distinct reduction to light touch and pin in the distal distribution of the right lateral femoral cutaneous nerve" and his assessment stated that "patient has chronic pain due to myofascial pain, multiple arthritic and bursae symptoms but her new symptoms are quite clearly related to Neuralgia Paresthetica, the syndrome of entrapment of the right lateral femoral cutaneous nerve at the anterior superior iliac spine" [id. at 640]; and (6) on January 21, 2015, the emergency room physical exam indicated Plaintiff "appears to have some element of bilateral carpal pedal spasm" and "some clenching of both of her hands" and a chest x-ray indicated "calcific tendinitis of the left shoulder" [id. at 680, 687–88].

Next, the ALJ stated that "claimant's allegations of headaches were intermittent at best and a magnetic resonance imaging (MRI) study of the brain was normal."[7] Id. at 66. The MRI was normal; however, headaches were mentioned at doctor visits on May 9, 2014 [id. at 414], May 12, 2015 [id. at 713], July 7, 2015 [id. at 697], July 27, 2015 [id. at 746], July 30, 2015 [id. at 668], September 24, 2015 [id. at 788], April 5, 2016 [id. at 844], and April 19, 2016 [id. at 852]. Then the ALJ stated that Plaintiff declined surgery for her left shoulder.[8] Id. at 66. However, the doctor noted that her shoulder is painful but "[p]atient is not interested in any surgery [as] she would not be able to go without use of her left arm for that long." Id. at 849, 852. The ALJ further noted that Plaintiff's "abdominal complaints were unconfirmed by a CT scan and there was evidence of normal gastric emptying," but the ALJ failed to explain what limiting symptom this conflicts with. Id. at 66. The ALJ also

---

[7] Again, Defendant offers additional reasons for discounting Plaintiff's allegations of headaches, such as Dr. Hossein Ansari's opinion on the headaches, but the ALJ did not cite to those reasons or offer them, and so the Court may not consider them. See Def.'s Mot. at 12–13; Garrison v. Colvin, 759 F.3d at 1010.
[8] Yet again, Defendant offers an additional reason for rejecting Plaintiff's testimony regarding shoulder pain—findings made by an orthopedic surgeon—that the ALJ did not offer or cite, and so the Court may not consider it. See Def.'s Mot. at 13; Garrison v. Colvin, 759 F.3d at 1010.

stated the following diagnoses for Plaintiff: (1) an MRI in October 2015 showing a full thickness tendon tear in her left upper extremity; (2) fibromyalgia; (3) restless leg syndrome in July 2015;[9] (4) July 2015 exam showing decreased sensation in her toes but a normal gait; (5) decreased motion in the left shoulder in February 2016 and tenderness of the shoulder in April 2016; (6) January 2015 exam showing clenching of both hands but normal strength and no tremors. Id. at 66–67.

Because the record contradicts some of the ALJ's findings and the ALJ fails to explain other findings, the ALJ's claim that the objective medical evidence fails to provide strong support for Plaintiff's allegations of disabling symptoms and limitations is not supported by substantial evidence. Furthermore, regarding Plaintiff's allegations of pain or limiting symptoms related to fibromyalgia, the Ninth Circuit has cautioned that fibromyalgia symptoms are often misunderstood:

> Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke*, 379 F.3d at 589. Typical symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue." *Id.* at 590. What is unusual about the disease is that those suffering from it have "muscle strength, sensory functions, and reflexes [that] are normal." *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting) (quoting Muhammad B. Yunus, *Fibromyalgia Syndrome: Blueprint for a Reliable Diagnosis*, Consultant, June 1996, at 1260). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." *Id.* (quoting Yunus, *supra*, at 1260). Indeed, "[t]here is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Id.* The condition is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590. "[T]here are no laboratory tests to confirm the diagnosis." *Id.*
> [. . .]

---

[9] Defendant offers another explanation for discounting Plaintiff's allegations regarding restless leg syndrome—that Plaintiff reported that medication helped the symptoms—but the ALJ did not offer that explanation, nor cite to it, and so the Court cannot consider it. See Def.'s Mot. at 13–14; Garrison v. Colvin, 759 F.3d at 1010.

15

> Therefore, diagnosis of fibromyalgia does not rely on X-rays or MRIs. Further, SSR 12-2P recognizes that the symptoms of fibromyalgia "wax and wane," and that a person may have "bad days and good days." SSR 12-2P, at *6. In light of this, the ruling warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider "a longitudinal record whenever possible." Id.

Revels v. Berryhill, 874 F.3d 648, 656–57 (9th Cir. 2017).

### E. Medical Opinion Evidence

Plaintiff does not coherently argue that the ALJ erred in his assessment of Plaintiff's pain and symptom allegations based on the medical opinion evidence. See Pl.'s Mot. at 10–11.[10] However, the Court notes that although the ALJ claims that he made his determination of Plaintiff's residual functional capacity "[a]fter reviewing the record as a whole," he is silent on the Residual Functional Capacity Questionnaire completed by Plaintiff's treating physician Sabrina A. Falquier, M.D. on September 23, 2014. AR at 626–27. Her questionnaire responses corroborate Plaintiff's allegations of pain and limiting symptoms. See id. To essentially give little weight to a treating physician's opinion by ignoring it is legal error. Garrison, 759 F.3d at 1012–13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

### F. Remand Versus Award Benefits

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." Trevizo v. Berryhill, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."

---

[10] Instead, Plaintiff argues that the ALJ could not have properly relied on the opinions of the consultative examiner, Russell Crider, M.D., and the non-examining State agency consultants. Pl.'s Mot. at 10–11. However, the ALJ did not rely on those medical opinions because he was silent on Dr. Crider's opinion, and he gave little weight to the opinions of the State agency medical consultants. AR at 67.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "[A] reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (internal quotation marks and citation omitted). A remand for an immediate award of benefits is appropriate only in rare circumstances. Id.

In this case, the ALJ erred by (1) failing to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's allegations regarding pain and limiting symptoms, and (2) assigning little weight to the medical opinion of Plaintiff's treating physician. Additionally, after the ALJ found that Plaintiff could perform her past work at step four of the sequential evaluation process, he did not proceed to step five, to determine whether Plaintiff could perform other work in the national economy. Therefore, the Court finds that it would be useful to enhance the administrative record.

## VII. CONCLUSION

For the reasons set forth above, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Cross-Motion for Summary Judgment be **DENIED**, and that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties on or before **June 28, 2019**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties on or before **July 12, 2019**. The parties are advised that

///
///
///
///

failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: June 14, 2019

Honorable Linda Lopez
United States Magistrate Judge